UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MIKAL R. MUHAMMAD, )
)
Petitioner, )
)
v. ) No. 4:13-CV-1816-SPM
)
JAY CASSADY,[1] )
)
Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Mikal R. Muhammad's ("Petitioner's") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 13). For the following reasons, the petition for a writ of habeas corpus will be denied.

## I.   FACTUAL BACKGROUND

The following background is taken from the Missouri Court of Appeals' opinion affirming the denial of Petitioner's motion for post-conviction relief:

As Tracy Hammond (Hammond), who works the night shift, was arriving home after going to the grocery store early in the morning of December 17, 2007, [Petitioner] approached him. As Hammond was coming upon his front door, [Petitioner] asked him for the time and the closest liquor store, then pointed a gun at Hammond and told him to get in the house. [Petitioner] and another individual then proceeded to bind up Hammond and his brother Jamie Hammond (Jamie) with duct tape retrieved from the kitchen. [Petitioner] hit Jamie on the head with the gun, and they proceeded to ransack and burglarize Hammond's home.

The victims identified [Petitioner] in both photographic and physical line-ups. They said they did not know [Petitioner] and had never met him before.

---

[1] Petitioner is currently in custody at the Jefferson City Correctional Center, where Jay Cassady is the warden. Jay Cassady will therefore be substituted as the proper respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Court.

[Petitioner]'s fingerprint was also discovered on a roll of duct tape[2] and a box of sandwich bags in Hammond's house. [Petitioner] was arrested and charged with two counts of first-degree robbery, three counts of armed criminal action, one count of first-degree burglary, and two counts of false imprisonment.

At trial, [Petitioner] maintained that he had met Hammond twice previously. He said he had met Hammond once when he went to Hammond's house with his cousin Reginald Brown (Brown) so Brown could converse with Hammond in the kitchen about some business while [Petitioner] waited in the living room. [Petitioner] also maintained he was at Hammond's house playing cards and smoking marijuana with Brown on December 16, 2007, the day before the incident. [Petitioner] tried to explain his fingerprint on the roll of duct tape by testifying that he took a roll of duct tape off of a box of sandwich bags on a shelf in Hammond's kitchen to retrieve a baggie to put some marijuana in that Hammond had given him.

Brown had in fact worked with Hammond for a few years and been to his house several times, once to buy some tires. Brown returned the tires because they did not fit his vehicle but told Hammond that his cousin, "G," might want to buy the tires instead. Hammond never met "G" but spoke with him on the phone the morning of the robbery regarding "G" buying the tires. [Petitioner]'s nickname is "Gube Thug" or just "Gube."

The jury found [Petitioner] guilty as charged, to-wit: of two counts of first-degree robbery, three counts of armed criminal action, one count of first-degree burglary, and two counts of false imprisonment.

Resp't Ex. I, at pp. 2-3.[3]

## II. PROCEDURAL BACKGROUND

In his direct appeal, Petitioner asserted a single claim of error based on the jury instructions given by the trial court. Resp't Ex. C, at p. 10. The Missouri Court of Appeals affirmed the judgment in part and remanded in part for resentencing. Resp't Ex. E.

In his *pro se* motion for post-conviction relief, Petitioner asserted three claims: (1) that his trial counsel was ineffective for failing to properly preserve a challenge to the prosecution's late introduction of evidence that Petitioner's thumb print was found on the duct tape found at the

---

[2] The fingerprint was found on the smooth side of the tape on the roll. Resp't Ex. A, Tr. 418:25-419:8; 420:12-21. The roll of duct tape also had blood on it containing the DNA of one of the victims, Jamie Hammond. Resp't Ex. A, Tr. 453:17-20; 455:2-8; 462:5-12; 467:23-24; 469:11-13.

[3] Respondent appears to have labelled two exhibits as "Exhibit H." The Court refers to the second of these (Doc. 12-9) as Exhibit I.

scene; and (2) that his trial counsel was ineffective for failing to properly impeach the victims in this case based on prior inconsistent statements; and (3) that his trial counsel was ineffective for failing to preserve an objection based on the double jeopardy clause to Petitioner's being charged with both robbery and burglary. Resp't Ex. F, at pp. 11-14.

In an amended motion, Petitioner's private counsel asserted five claims of ineffective assistance of counsel: (1) ineffective assistance of trial counsel based on insufficient communication between trial counsel and Petitioner prior to trial; (2) ineffective assistance of trial counsel based on failure to interview and call Reginald Brown as a witness; (3) ineffective assistance of trial and appellate counsel based on their failure to address the trial court's deviation from the Missouri Approved Instructions; (4) ineffective assistance of trial counsel based on failure to investigate and support Petitioner's trial testimony with cellular phone records of Reginald Brown and Petitioner; and (5) ineffective assistance of counsel based on trial counsel's failure to object to the prosecutor's voir dire examination about DNA and fingerprints. Resp't Ex. F, at pp. 66-68. The amended motion also included the statement that Petitioner "herein states and realleges and reavers all paragraphs and averments contained in [his pro se] original Motion To Set Aside or Correct Judgment and Sentence." *Id.* at pp. 69-70.

A few hours later, Petitioner's appointed counsel filed another amended motion asserting two claims of ineffective assistance of counsel: (1) ineffective assistance of trial counsel based on the failure to object and request a mistrial when the State untimely disclosed on the day of trial that its examiner had identified Petitioner's fingerprint on the smooth side of the roll of duct tape found at the scene; and (2) ineffective assistance of appellate counsel based on the failure to assert on appeal that the trial court erred in overruling Petitioner's motion to suppress suggestive identifications. Resp't Ex. F, at pp. 40-59. However, Petitioner's appointed counsel also filed an

alternative motion to withdraw as counsel and strike the amended motion in the event that private counsel had entered for Petitioner without appointed counsel's knowledge. Resp't Ex. F, at pp. 31-33.

In light of the fact that appointed counsel had moved to withdraw and private counsel had entered an appearance, both the motion court and the Missouri Court of Appeals treated private counsel's amended motion as the one Petitioner intended for the court to consider. *See* Resp't Ex. I, at p. 8 & n.2. The motion court denied the claims without an evidentiary hearing. Resp't Ex. F, at pp. 71-80. The Missouri Court of Appeals affirmed the motion court's decision. Resp't Ex. I.

On September 13, 2013, Petitioner filed his *pro se* petition in the instant action. Petitioner asserts six grounds for relief: (1) that the motion court erred in denying his motion for post-conviction relief without an evidentiary hearing, because he pleaded facts supporting his claim that trial counsel was ineffective for failing to interview and call Reginald Brown as a witness; (2) that the motion court erred in denying his motion for post-conviction relief without holding an evidentiary hearing, because Petitioner pleaded facts supporting his claim that trial counsel was ineffective based on trial counsel's failure to investigate and support Petitioner's trial testimony with the cell phone records of Reginald Brown and Petitioner; (3) that the motion court erred in denying his motion for post-conviction relief without issuing findings of fact and conclusions of law on Petitioner's allegation that his trial counsel was ineffective for failing to object and to request a mistrial when the State untimely disclosed on the day of trial that the examiner had found one of Petitioner's fingerprints on the roll of duct tape found at the crime scene; (4) that Petitioner was denied effective assistance of counsel when trial counsel failed to impeach Tracy Hammond with his prior inconsistent statements; (5) that Petitioner was denied

effective assistance of counsel when trial counsel failed to impeach Jamie Hammond with his prior inconsistent statements; and (6) that the prosecuting attorney violated *Brady v. Maryland* by not disclosing until the day of trial that Petitioner's fingerprint had been found on the roll of duct tape found at the scene.

## III.    LEGAL STANDARDS

### A.  Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an

"unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B.  Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 41 (8th Cir. 1996) (en banc)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

*Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## IV. DISCUSSION

### A. Ground One: Ineffective Assistance of Counsel—Failure to Interview and Call Reginald Brown as a Witness

In Ground One, Petitioner argues that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing, because he pleaded facts showing that trial counsel was ineffective for failing to interview and call Reginald Brown as a witness. He argues that Mr. Brown would have corroborated Petitioner's testimony that he had had prior contact with the Hammonds and had been in their home. Petitioner suggests that he was entitled to a hearing under Missouri law. Petitioner also argues the merits of his ineffective assistance claim and asserts that the motion court's ruling denied him his right to effective assistance of counsel, due process of law, and a right to a fair trial under the United States and Missouri Constitutions.

Respondent argues that this claim is not cognizable on habeas review because Petitioner is asserting an error of state law with regard to state-court post-conviction proceedings. The Court agrees in part. To the extent that Petitioner's claim is that the motion court erred by not providing him with an evidentiary hearing as required by state law, such a claim is not cognizable for purposes of federal habeas. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas relief does not lie for errors of state law.") (quotation marks omitted); *Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas."). However, the Court disagrees with Respondent's assertion that Petitioner is asserting

only a state-law error. Giving Petitioner's *pro se* pleading a liberal construction, as the Court must, it is apparent that he is also asserting an ineffective assistance of counsel claim under the Sixth Amendment, and the Court will address that claim. Petitioner raised his ineffective assistance claim in his motion for post-conviction relief, and the motion court denied it on the merits. Resp't Ex. F, at pp. 74-78. On appeal, the Missouri Court of Appeals affirmed the denial. Resp't Ex. I, at pp. 5-7.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v.*

*Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Here, the Missouri Court of Appeals articulated the *Strickland* standard and then rejected Petitioner's ineffective assistance claim, Resp't Ex. I, at pp. 5-7, and its decision did not involve an objectively unreasonable application of *Strickland*. With regard to the first prong, as the Missouri Court of Appeals reasonably noted, Petitioner himself admitted that he had tried to locate Mr. Brown and was unable to locate him, Resp't Ex. A, Tr. 566:17-21. Moreover, when the trial court asked trial counsel about Mr. Brown's absence, trial counsel responded that the defense had made several attempts to reach and contact Mr. Brown, including trial counsel speaking to Mr. Brown's mother, and that neither trial counsel nor Mr. Brown's mother had any idea where he was. *Id.,* Tr. 586:22-587:18. Petitioner offers the Court no reason to believe that trial counsel could have located Mr. Brown through any reasonable efforts. In addition, the Court of Appeals reasonably found that Mr. Brown's testimony would have, at most, provided impeachment evidence as to the victims' testimony that they had never met their assailant; it would not have contradicted the key evidence on which Petitioner was convicted: the victims' physical and lineup identifications of Petitioner and the fingerprint from Petitioner found on the smooth side of the roll of duct tape found at the scene. *See* Resp't Ex. I, at pp. 6-7. In light of the difficulty in locating Mr. Brown, the fact that his testimony would not have contradicted the prosecution's key evidence, and the "doubly deferential" standard this Court must apply, it was

not objectively unreasonable for the state court to find counsel's performance not deficient based on a failure to make additional efforts to interview and call Mr. Brown.

Even assuming, *arguendo*, that Petitioner could have established that his trial counsel's performance was deficient based on the failure to interview and call Mr. Brown as a witness, he would not be able to satisfy the prejudice prong. Petitioner asserts that Mr. Brown's testimony would have corroborated Petitioner's testimony that he knew the Hammonds and had been to their home on previous occasions, and would have contradicted the Hammonds' testimony that they did not know Petitioner. However, the value of Mr. Brown's testimony would have been undermined by inconsistencies between Petitioner's own testimony and Mr. Brown's account of events. At trial, Petitioner testified that he was introduced to Tracy Hammond by Mr. Brown and that Petitioner had been to the Hammonds' house twice, each time with Mr. Brown and Tracy Hammond: once early in December for just a few minutes, when not much occurred; and once on December 16, 2007 (the day before the robbery), when they played cards and smoked marijuana. Resp't Ex. A, 538:2-539:6, 539:21-540:5; 541:6-7. He also testified that while he knew Tracy Hammond, he only "kn[e]w of" Tracy's brother Jamie. Resp't Ex. A, Tr. 537:23-538:1. However, in Petitioner's amended motion for post-conviction relief, Petitioner asserted that Mr. Brown would have testified "that he introduced [Petitioner] to Jamie and Tracy Hammonds the day before the robbery at the Hammond residence," Resp't Ex. F, at 69,—a statement that does not accord with Petitioner's testimony that Mr. Brown had introduced Petitioner to Tracy on an earlier occasion and that Petitioner only "knew of" Jamie. Moreover, in an affidavit Petitioner submitted to this Court, Mr. Brown offers a third account that does not accord with the first two: he indicates that Petitioner "had been to the Hammond's residence with [Mr. Brown] on numerous occasions where we engage in casual activities such as partying with

girls, playing cards, watching sports, drinking and smoking marijuana" and also that "[Petitioner] and the Hammonds would socialize outside of my presence, as I can recall occasions when visiting the Hammond's residence and [Petitioner] would already be there." Brown Aff., Doc. 24, ¶¶ 3-4. The lack of consistency between these statements renders them less credible and undermines the suggestion that, had Mr. Brown testified at trial, the outcome would have been more favorable to Petitioner.

Petitioner further argues that Mr. Brown's testimony that Petitioner had been at the Hammonds' home prior to the incident was "crucial because it would have provided a reasonable and plausible basis for the presence of petitioner's fingerprints on the Ziploc freezer bag box and the roll of duct tape found in the Hammond's residence." *See* Reply, at p. 11. The Court of Appeals disagreed, reasonably finding that, in light of the other evidence of Petitioner's guilt, Mr. Brown's testimony would not have provided him with a viable defense:

> [I]n his motion, [Petitioner] alleged that Brown would have testified that [Petitioner] had been to the victims' home and met them before, contradicting Hammond's testimony to the contrary. However, this testimony would be merely impeachment testimony and would not have given [Petitioner] a defense, especially in light of the substantial evidence implicating him in the form of photographic and physical line-up identifications by the two victims and [Petitioner]'s fingerprint on the smooth side of the roll of duct tape that had been used to bind the victims. The fact that [Petitioner]'s fingerprints were on the smooth outer side of the roll meant that he was the last one to use the tape. Accordingly, [Petitioner]'s story about touching the roll of tape the day before the break-in while he was an invited guest of Hammond's does not explain his fingerprint lifted from the roll of tape. Brown's testimony would not have explained this fact away either.

Resp't Ex. I, at pp. 6-7.

This determination was not contrary to, or an unreasonable application of, *Strickland*, nor did it involve an unreasonable determination of the facts. Although Mr. Brown's testimony would have to some extent corroborated Petitioner's testimony that Petitioner had been to the

Hammonds' home prior to the robbery and therefore had the opportunity to handle the roll of duct tape prior to the robbery, it would not have provided any plausible reason why Petitioner's fingerprint remained on the smooth, outer side of the roll of duct tape *after* the duct tape was used in the robbery. With or without Mr. Brown's testimony, Petitioner's explanation for why his fingerprint was on the roll of duct tape is implausible and unreasonable. In addition, because Mr. Brown was not present at the time of the crime and was not with Petitioner at the time of the crime, his testimony would not have negated the victims' identification of Petitioner as their attacker. At most, Mr. Brown's testimony would have impeached the testimony that the victims had never seen Petitioner before.

Because Mr. Brown's testimony would not have undermined the overwhelming evidence of Petitioner's guilt—the victims' clear identifications of Petitioner as their assailant, combined with the presence of Petitioner's fingerprint on the smooth, outer side of the roll of duct tape found at the scene—there is no reasonable probability that Mr. Brown's testimony would have changed the outcome of the case. Therefore, the Missouri Court of Appeals' rejection of this ineffective assistance claim was not unreasonable.

**B. Ground Two: Ineffective Assistance of Trial Counsel—Failure to Investigate Cell Phone Records**

In Ground Two, Petitioner argues that the motion court erred in denying his Rule 29.15 motion without holding an evidentiary hearing, because Petitioner pleaded facts supporting his claim that his trial counsel was ineffective based on trial counsel's failure to investigate and support Petitioner's trial testimony with the cell phone records of Reginald Brown and Petitioner. Petitioner argues that cell phone records would have impeached the credibility of Jamie and Tracy Hammond, because they would have shown that, contrary to their testimony, Jamie and Tracy Hammond knew Petitioner.

As with Ground One, Respondent argues that this claim is not cognizable for purposes of federal habeas review. As with Ground One, the Court agrees that to the extent the claim is based on an error of Missouri law, it is not cognizable. However, the Court finds that Petitioner is also asserting a claim of ineffective assistance of counsel and will consider that claim. Petitioner raised his ineffective assistance claim in his motion for post-conviction relief, and the motion court denied it on the merits. Resp't Ex. F, at p. 79. On appeal, the Missouri Court of Appeals affirmed the denial. Resp't Ex. I, at p. 7. The court stated:

> [This claim] is . . . meritless because Hammond testified to knowning [sic] Brown, working with him for several years, having him at his house and selling him some tires. Also, Hammond testified to having spoken on the phone with Brown's cousin "G" regarding purchasing tires also, at least once on the morning of the incident. Therefore, cell phone records showing telephone correspondence between Hammond and [Petitioner] and/or Brown would not prove anything that would be relevant in establishing a defense for [Petitioner] to the crimes of which he was convicted. Accordingly, counsel was not ineffective for failing to produce [Petitioner] and Brown's cell phone records.

Resp't Ex. I, at p. 7.

This determination was not contrary to, or an unreasonable application of, *Strickland*, nor does it involve an unreasonable determination of the facts. Even assuming that Petitioner could show deficient performance based on the failure to investigate the cell phone records, Petitioner would be unable to show prejudice. Tracy Hammond had already testified that he had known Mr. Brown for a couple of years, Resp't Ex. A, Tr. 254:5-12, 19-22; and that Mr. Brown had been to his house several times, *id.*, Tr. 255:3-5. Cell phone records showing a history of calls between them would simply have confirmed the existence of that relationship. Moreover, Tracy Hammond testified that he had previously spoken with Mr. Brown's cousin "G" about the possibility that "G" would purchase some tires. *Id.*, Tr. 256:3-18. In light of the fact that Petitioner is Mr. Brown's cousin and his nickname is "Gube," *id.*, Tr. 537:15-16, 556:14-23, it is

reasonable to infer that "G" was Petitioner. Therefore, even if the cell phone records had shown telephone calls between Tracy Hammond and Petitioner, that would have been consistent with the testimony offered at trial suggesting that Tracy Hammond had spoken with Petitioner by phone but that Tracy Hammond did not know Petitioner and had not had Petitioner over to his house. With regard to Jamie Hammond, when Petitioner was asked at trial whether he knew Tracy and Jamie Hammond, Petitioner testified, "Well, I know of his brother, but I know Tracy." Resp't Ex. A, Tr. 537:25-538:1. There is nothing in the record to indicate that they had any relationship or that cell phone records would have shown calls between Petitioner and Jamie.

In light of the above, the state court reasonably found that the cell phone records would not have proven anything that would be relevant to Petitioner's defense. Thus, Petitioner cannot establish a reasonable probability that, had trial counsel obtained those records, the outcome of the case would have been different. Because Petitioner did not suffer prejudice under *Strickland*, this ineffective assistance of counsel claim must be denied.

### C. Ground Three: Ineffective Assistance of Trial Counsel—Failure to Object to Admission of Fingerprint Evidence and/or Request a Mistrial Based on Late Disclosure of Fingerprint Evidence

In Ground Three, Petitioner argues that the motion court erred in denying his motion for post-conviction relief without issuing findings of fact and conclusions of law on Petitioner's allegation that his trial counsel was ineffective for failing to object and to request a mistrial when the state untimely disclosed on the day of trial that the examiner had found one of Petitioner's fingerprints on the roll of duct tape found at the crime scene. As with Grounds One and Two, Respondent argues that this claim is not cognizable for purposes of federal habeas review. As with Grounds One and Two, the Court agrees that to the extent the claim is based on an error of

Missouri law, it is not cognizable. However, the Court finds that Petitioner is also asserting a claim of ineffective assistance of counsel and will consider that claim.

Petitioner raised this ineffective assistance claim his *pro se* motion for post-conviction relief, Resp't Ex. F at pp. 11-13, and in the amended motion for post-conviction relief filed by appointed counsel, Resp't Ex. F, at 41. However, the amended motion filed by appointed counsel was withdrawn, and Petitioner did not raise the ineffective assistance claim in the amended motion filed by private counsel. Resp't Ex. F, at pp. 65-70.[4] Petitioner raised this claim on appeal from the denial of the motion. Resp't Ex. G, at pp. 48-56. The Missouri Court of Appeals declined Petitioner's request to remand the claim to the motion court, finding that it had not been properly presented in the Rule 29.15 motion that was before the motion court. Resp't Ex. I, at p. 8.

As Petitioner acknowledges in his Reply, this claim is procedurally defaulted based on Petitioner's failure to properly present the claim to the motion court. *See Interiano v. Dormire*, 471 F.3d 854, 856-57 (8th Cir. 2006) (claims included in *pro se* motion for post-conviction relief under Rule 29.15 but not included in amended motion by appointed counsel or in appeal from denial of that motion are procedurally defaulted); *Wills v. State*, 321 S.W.3d 375, 386-87 (Mo. Ct. App. 2010) (under Missouri law, claims included in a *pro se* motion for post-conviction relief but not in a subsequent amended motion were "not properly before the motion court because they were a nullity").

---

[4] As the motion court noted, the amended motion filed by private counsel did include a line purporting to "reallege[] and reaver[] all paragraphs and averments contained in [the pro se motion]." However, as the motion court recognized, Missouri Supreme Court Rule 29.15(g) expressly states that an "amended motion shall not incorporate by reference material contained in any previously filed motion." *See* Resp't Ex. F, at pp. 79-80.

As discussed above, a state prisoner can overcome such a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner does not provide any argument for applying the fundamental miscarriage of justice exception here. However, he asserts that cause for the default exists under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court has recognized that a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. 132 S. Ct. at 1320. To overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318. The second prong is evaluated by determining whether Petitioner has made a substantial case under the *Strickland v. Washington* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014); *Sund v. Young*, No. 5:14–CV–05070–KES, 2015 WL 4249405, at *4-*5 (D.S.D. July 13, 2015). As discussed above, to show ineffective assistance of counsel under *Strickland,* Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

With regard to the first *Martinez* prong, Petitioner cannot establish that his post-conviction relief counsel was ineffective under *Strickland* for failing to include this ineffective assistance in the amended motion for post-conviction relief. The Eighth Circuit has explained:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that

16

counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted).

The same logic applies to claims of ineffective assistance of post-conviction relief counsel. Here, Petitioner's post-conviction relief counsel pursued five claims of ineffective assistance of counsel in the amended motion for post-conviction relief: (a) a claim based on trial counsel's failure to properly communicate with Petitioner prior to trial; (b) a claim based on trial counsel's failure to interview and call Reginald Brown as a witness; (c) a claim based on trial and appellate counsel's failure to raise and preserve a challenge to the trial court's deviation from the Missouri Approved Jury instructions in his opening remarks to the jury; (d) a claim based on trial counsel's failure to investigate and support Petitioner's trial testimony with the cellular telephone records from Reginald Brown and Petitioner; and (e) a claim based on trial counsel's failure to object to the prosecutor's voir dire about DNA and fingerprints. *See* Resp't Ex. F at pp. 65-68. Post-conviction counsel also described in the motion the evidence that it would introduce to support those claims if a hearing were granted, including testimony from Petitioner, testimony from Reginald Brown, and the "fragmented trial file" of trial counsel. *Id.* at p. 69. It appears that post-conviction counsel determined that the claims presented were the most meritorious claims and the ones that could be supported with evidence, and Petitioner offers no argument or evidence to overcome the presumption that counsel's decision to focus on these five claims was a reasonable strategy. Moreover, as discussed below, the omitted ineffective assistance claim was of little merit and is not clearly stronger than the ones presented. Thus, Petitioner's post-conviction counsel's decision not to include this claim in the amended motion "falls within the

wide range of reasonable professional assistance" under *Strickland*'s deferential standards. *See Strickland*, 466 U.S. at 689.

Even assuming, *arguendo*, that post-conviction relief counsel was ineffective based on his failure to present this claim, a review of the record does not suggest that the underlying claim of ineffective assistance of trial counsel was a substantial one. First, trial counsel *did* file a motion to suppress the fingerprint evidence, but she chose to focus on a different argument than the one Petitioner focuses on, asserting that the evidence had not followed the appropriate chain of custody, that the evidence was not processed correctly, that department procedures for analyzing and testing the evidence were not followed, and that the evidence was contaminated. Resp't Ex. B, at pp. 38-39. Petitioner offers nothing to rebut the presumption that trial counsel's decision to focus on these arguments instead of the late disclosure argument was a reasonable strategy. Moreover, despite a relative lack of time to prepare, the defense did offer an explanation for the presence of Petitioner's fingerprint on the duct tape: Petitioner's testimony that he had been to the Hammonds' residence the day before the incident and had picked up and moved the roll of duct tape. She also cross-examined the State's witness to establish that the State's witness had not tested the roll of duct tape to see if it was the roll from which the duct tape used at the crime scene had come. Resp't Ex. A, Tr. 440:13-441:5. She also argued in closing argument that the State had not shown that the roll of tape was the same one used at the crime scene. Resp't Ex. A, Tr. 607:1-15. Overall, Petitioner cannot show that trial counsel's decision not to pursue the late disclosure argument constituted an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," as would be needed to show deficient performance.

Because Petitioner's post-conviction relief counsel was not deficient, and because the underlying defaulted claim of ineffective assistance of trial counsel was not substantial, Petitioner's *Martinez* argument fails. Thus, Petitioner has failed to show cause for the procedural default of Ground Three, and it must be denied.

### D. Ground Four: Ineffective Assistance of Counsel — Trial Counsel's Failure to Impeach Tracy Hammond with Prior Inconsistent Statements

In Ground Four, Petitioner asserts that he was denied effective assistance of counsel when his trial counsel failed to impeach witness Tracy Hammond based on prior inconsistent statements. As Petitioner acknowledges in his Petition and Reply, this claim is procedurally defaulted based on Petitioner's failure to properly present the claim to the motion court. *See Interiano*, 471 F.3d at 856-57; *Wills v. State*, 321 S.W.3d at 386-87.

As with Ground Three, Petitioner argues that cause for the default exists under *Martinez*, because his post-conviction counsel was ineffective for failing to raise this claim in his post-conviction motion. As discussed above, to overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318.

Petitioner cannot establish either prong of the *Martinez* inquiry. As discussed above, Petitioner's post-conviction relief counsel presented five other ineffective assistance claims in the amended motion for post-conviction relief, and the presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. That is not the case here, because the underlying claim of ineffective assistance of trial counsel is not a substantial one.

Petitioner first argues that his trial counsel was ineffective because she failed to impeach Tracy Hammond regarding his inconsistent statements about whether he saw two people outside his residence or only one. However, a review of the record shows that trial counsel *did* impeach Tracy Hammond about those statements: after Tracy Hammond testified at trial that he saw two individuals outside, trial counsel confronted him about his prior deposition testimony in which he had testified that he only saw one person outside. Resp't Ex. A, Tr. 292:6-294:9. Petitioner also argues that trial counsel was ineffective because she did not impeach Tracy Hammond's trial testimony that he had never seen Petitioner before the robbery and did not know him, by pointing to prior deposition testimony indicating that Tracy Hammond had spoken to Petitioner on the phone about buying tires and that Petitioner was going to come "back" to Tracy Hammond's residence. Again, however, Petitioner's trial counsel did confront Tracy Hammond with this prior deposition testimony to impeach his trial testimony. *See* Resp't Ex. A, Tr. 307:21-313:8. Petitioner also argues that trial counsel did not impeach Tracy Hammond's testimony about his brother's bed being ransacked by pointing to his earlier deposition testimony that there was no mattress in his brother's room. Again, however, the record shows that Petitioner's trial counsel did confront Tracy Hammond with that prior deposition testimony. See Resp't Ex. A, Tr. 325:3-24. Trial counsel cannot be found ineffective for failure to do something that she did do.

Finally, Petitioner also argues that trial counsel was ineffective because she failed to use prior deposition testimony to impeach Tracy Hammond's trial testimony that "when I was on the floor with the defendant having the gun on me and the second person came in, then when he came in he told the third person to go and check the basement to see whatever was down there apparently," Resp't Ex. A, Tr. 267:9-13, with his prior deposition testimony that "The robber asked the second guy to go in the basement." *See* Mem. Supp. Pet'n, Doc. 1-1, at pp. 33-34.

There does appear to be some inconsistency there. However, Tracy Hammond testified that he never saw a third person and was just going on what he heard, Resp't Ex. A, Tr. 267:14-20, and whether the second person or a third person was told to go into the basement was not a significant issue at trial. Particularly in light of the many other ways in which trial counsel chose to impeach Tracy Hammond's testimony, her decision not to impeach him on this particular point does not constitute deficient performance. Moreover, there is no reason to believe that impeaching Tracy Hammond on this particular point would have had any impact on the outcome of the trial.

Because the underlying defaulted claim of ineffective assistance of trial counsel was not substantial, and because Petitioner's post-conviction relief counsel was not deficient for failing to raise it, Petitioner's *Martinez* argument fails. Thus, Petitioner has failed to show cause for the procedural default of Ground Four, and it must be denied.

### E. Ground Five: Ineffective Assistance of Counsel—Trial Counsel's Failure to Impeach Jamie Hammond with Prior Inconsistent Statements

In Ground Five, Petitioner asserts that he was denied effective assistance of counsel when his trial counsel failed to impeach witness Jamie Hammond based on prior inconsistent statements regarding his description of his assailant. As Petitioner acknowledges in his Petition and Reply, this claim is procedurally defaulted based on Petitioner's failure to properly present the claim to the motion court. *See Interiano*, 471 F.3d at 856-57; *Wills*, 321 S.W.3d at 386-87. Petitioner again argues that cause for the default exists under *Martinez*, because his post-conviction counsel was ineffective for failing to raise it.

As with Ground Four, Petitioner cannot establish either prong of the *Martinez* inquiry, because the underlying ineffective assistance of counsel claim was not clearly stronger than the claims post-conviction counsel did raise and because the underlying ineffective assistance of

counsel claim is not a substantial one. The testimony cited in Petitioner's own memorandum in support of his petition makes it clear that trial counsel *did* impeach Jamie Hammond by confronting him with prior inconsistent statements regarding his description of his assailant. *See* Mem. Supp. Pet'n, Doc. 1-1, at pp. 37-41; Resp't Ex. A, Tr. 365:3-368:14. In addition, Petitioner's trial counsel elicited testimony from the officer who took Jamie Hammond's prior statement about his description of his assailant, which again showed the jury that Petitioner's prior description of his assailant differed from his description at trial. Resp't Ex. A, Tr. 514:17-515:8.

Because the underlying defaulted claim of ineffective assistance of trial counsel was not substantial, and because Petitioner's post-conviction relief counsel was not deficient for failing to raise it, Petitioner's *Martinez* argument fails. Thus, Petitioner has failed to show cause for the procedural default of Ground Five, and it must be denied.

### F.  Ground Six: *Brady* Violation

In Ground Six, Petitioner asserts that a violation of *Brady v. Maryland*, 37 U.S. 83 (1963), occurred when the State withheld material evidence. Specifically, he asserts that the State violated *Brady* when it waited until the day of trial to disclose that its examiner had found Petitioner's fingerprint on the roll of duct tape found at the crime scene. In his Reply, Petitioner appears to abandon this claim, stating that he "will waive (ground six)." *See* Reply, Doc. 23, at p. 2 n.2. Nevertheless, in the interest of completeness, the Court will briefly address it.

As Petitioner acknowledges in his petition, this claim is procedurally defaulted due to Petitioner's failure to raise it at any stage in state court. Petitioner appears to argue that cause for the default exists under *Martinez* because his post-conviction counsel was ineffective. However, *Martinez* applies only to defaulted claims of ineffective assistance of counsel, not other defaulted claims. *See Martinez*, 132 S. Ct. at 1315. To the extent that Petitioner is arguing that ineffective

assistance of trial counsel constituted cause for the procedural default of this claim, such an argument is also without merit. Because Petitioner's claim that trial counsel was ineffective for failure to address the late disclosure of evidence was itself procedurally defaulted and the Court found no cause for the procedural default (as discussed above), that ineffective assistance claim cannot constitute cause for the default of the *Brady* claim. *See Fields v. Roper*, 448 F. Supp. 2d 1113, 1117 (E.D. Mo. 2006) ("Because petitioner's ineffective assistance of counsel claims are themselves procedurally defaulted, they cannot serve as a basis for demonstrating 'cause' and avoiding the procedural bar with respect to the underlying claims."). Because Petitioner offers no other argument regarding cause or prejudice and does not assert that the fundamental miscarriage of justice exception applies, the Court is barred from reviewing this claim.

Moreover, this claim is without merit. Although *Brady* requires the disclosure of both exculpatory and impeachment evidence, "*Brady* does not require the government to disclose inculpatory evidence." *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996). The evidence that Petitioner's fingerprint was found on the roll of duct tape found at the crime scene was clearly inculpatory, not exculpatory, so there was no *Brady* violation.

## V.    CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues

differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that she has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of August, 2016.